UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WARREN ENVIORNMENTAL INC., A&W MAINTENANCE, INC.<br>Plaintiffs,<br><br>vs.<br><br>PROFESSIONAL SERVICE INDUSTRIES, INC.<br>Defendant | C.A. #05-11642-DPW |

**AFFIDAVIT OF BRIAN P. VOKE, ESQUIRE
IN SUPPORT OF PROFESSIONAL SERVICE INDUSTRIES, INC.'S
MOTION FOR CHANGE OF VENUE**

I, Brian P. Voke, being duly sworn on my oath and based upon knowledge, information and belief state as follows:

1. I am counsel for Professional Service Industries, Inc. ("PSI") in the above matter.

2. PSI is a Delaware corporation with a principal place of business in Oakbrook Terrace, Illinois. PSI's Alabama laboratory performed the laboratory testing at issue in this case. Attached is a copy of the contract between PSI and Jefferson County, Alabama for the sewer project which is the subject of the plaintiff's Complaint.

3. **Jonathan Igo, Birmingham, Alabama** - Mr. Igo is a former employee of PSI and a current resident of Alabama. As the project manager for PSI, he performed and supervised testing on the Warren "product samples" from the Jefferson County project and signed many of the PSI testing reports. Mr. Igo is expected to testify relative to PSI's testing methods and procedures used to test the "product samples". He is also expected to testify that the testing of the "product samples" was done according to ASTM standards. He is further expected to testify that PSI verified the results it obtained in testing of Warren "product samples" by comparing

those results with other products PSI tested. He is further expected to testify that PSI's test procedures and methods were consistently reliable and accurate. He is further expected to testify that a number of the "product samples" provided to PSI did not meet Jefferson County's product specifications. He is further expected to testify that after Warren's "product samples" failed to comply with contract documents, Jefferson County representatives asked A&W/Warren to lower the claims they made relative to the strength of the product. Mr. Igo is further expected to testify that PSI testing was reliable and was not faulty as claimed by the plaintiffs. Mr. Igo also can be expected to testify that the laboratory equipment used to perform the testing was properly calibrated.

4.      **Jim MaCrae, Birmingham, Alabama** - Mr. MaCrae, a former PSI employee, was employed as a manager of PSI's laboratory and metallurgical service in Alabama from March 2001 until April, 2003. Mr. McCrea is a resident of Alabama. Mr. MaCrae is expected to testify as to the type of "product samples" received and tested, the manner in which the "product samples" were poured, the methods and procedures used to test the "product samples" and his review of the test results for the "product samples". Mr. MaCrae is expected to testify that PSI testing of the Warren "product samples" from the Jefferson County Project was performed according to ASTM standards D638 and D790.

He is further expected to testify that in 2002 he reviewed PSI's testing procedures and methods and determined they complied with the ASTM specifications, with the exception that total elongation instead of elongation at yield or break was historically reported. Mr. MaCrae is further expected to testify that PSI's test results on the Warren "project samples" were reliable and were not false as claimed by the plaintiffs. Mr. MaCrae is further expected to testify that PSI's testing of the Warren "product samples" showed that a high percentage of the test samples

2

failed to meet product requirements. He is further expected to testify that PSI's test results from the Warren "product samples" were compared to PSI's test results for other manufacturer's products and were determined to be reliable. He is further expected to testify that PSI performed it obligations to Jefferson County under the contract at issue in this case.

5.   **Johnny Woods, Birmingham Alabama** - Mr. Woods is a former employee of PSI. He was employed as the department manager of PSI's Birmingham laboratory from October 1997 - December 1999. As the department manager, Mr. Woods performed and supervised testing on the "product samples" from the Jefferson county project. Mr. Woods is expected to testify relative to the PSI's testing methods and procedures used to test the "product samples". He is expected to testify that the testing of the "product samples" was done according to ASTM standards. He is further expected to testify that PSI's test results from the Warren "product samples" were compared to PSI's test results for other manufacturer's products and were determined to be reliable. He is further expected to testify that PSI's test procedures and methods were reliable and accurate.

He is further expected to testify that Warren "product samples" supplied by A&W on the Jefferson County sewer project failed to comply with the contract documents and contract specifications. Mr. Woods is further expected to testify that PSI's testing was not faulty and was not wrong as claimed by the plaintiff. Mr. Woods can be expected to testify as to the reliability of the equipment used to perform the testing and the reliability of the test results received. He is further expected to testify that PSI never told anyone about the test results of Warren's products other than A&W/Warren, Jefferson County and U.S. Infrastructure, Inc. He is further expected to testify that PSI fulfilled its contract obligations to Jefferson County. Mr. Woods currently resides in Alabama.

6. **Jim Peques, Birmingham, Alabama** - Mr. Peques is a resident of Alabama and a former employee of PSI. He was an engineer at PSI's Alabama office which performed the testing at issue. Mr. Peques could be expected to testify that he reviewed the manner in which PSI's tests of the Warren/A&W "product samples" were interpreted, tracked and calculated for their reliability.

7. **John Willet, Birmingham, Alabama** - Mr. Willet is a resident of Alabama and an employee of U.S. Infrastructure, Inc., ("U.S.") the project engineer for the Jefferson County sewer reconstruction project. PSI expects that Mr. Willet would testify that he was a member of the Jefferson County Project Review Committee from 1997 through the present; that in June 1997 the committee gave provisional approval to the Warren epoxy product; that in July 2002 the committee disapproved the product after the product samples submitted to U.S. by A&W/Warren for testing by PSI, failed to meet the project specifications. The committee reinstated the Warren product after the Committee met with Warren and concluded that the low test results obtained was the result of the manner in which A&W/Warren was creating the "product samples" for testing by PSI. Mr. Willet is further expected to testify that he is familiar with PSI's testing of the "product samples" at issue and PSI fulfilled it contract obligations with Jefferson County. PSI did not breach its contract with Jefferson County. Willet is further expected to testify that there was nothing faulty about PSI's testing methods.

8. **John Bailey, Tim Patton and Danny Homes** - John Bailey, Tim Patton and Danny Homes were inspectors employed by the U.S. in Alabama. PSI expects these witnesses to testify as to the method of creating the configurations, the physical condition and the method of transporting the "product samples" from A&W on the job site to the PSI laboratory for testing.

4

9. **Jefferson County Employees** - PSI also expect to call Jefferson County Commission officials to testify as to their reasons for terminating A&W's contract and the information they received from Warren which resulted in the rehiring of A&W on the Jefferson County Sewer Reconstruction Project. PSI also expects to call Jefferson County representatives as witnesses to testify that PSI fulfilled it contract obligations.

10. **Seth Hammer, Birmingham, Alabama** - Mr. Hammer was an employed at U.S. Infrastructure, Inc. and worked closely with PSI on the Jefferson County Project. PSI expects that Mr. Hammer would testify that PSI compiled with its contractual obligations to Jefferson County relative to the testing PSI contracted to perform. Mr. Hammer reportedly lives in Alabama.

11. **Tim Tucker, Alabama** - Mr. Tucker was employed by U.S. Infrastructures, Inc. in Birmingham Alabama and worked with PSI on the Jefferson County Project. PSI expects Mr. Tucker would testify that he came to PSI's laboratory on behalf of Jefferson County to inspect PSI's testing and procedure after Warren complaints about PSI's testing. Mr. Tucker could further be expected to testify that after reviewing PSI's testing and procedure he had no complaints or concerns about PSI's testing methods. The last available information was that he lived in Alabama.

12. **Haley Rast Construction ("Haley"), Birmingham, Alabama -**
Haley was a contractor on the project associated with A&W and doing the actual epoxy application on the sewer system. Haley poured the "product samples" that were given to U.S. Infrastructure, Inc. and then sent to PSI for testing. PSI expects that Haley will describe the manner in which they prepared the "product samples" which U.S. Infrastructure, Inc. (through

John Willet) determined were too brittle and thus failed to pass the county testing specifications to which PSI tested the "product samples".

13.     **Jefferson County Products Review Committee** - Don Ellis, Guy Locker and Harry Chandler who were Alabama residents were on the product review committee which approved, disapproved and re-approved Warren's epoxy product. PSI expects that these witnesses would testify at trial, consistent with John Willet's testimony, as to the reason that Warren's product was removed from Jefferson County's product approved list and reinstated in 2002. On information and belief Guy Locker and Harry Chandler are Alabama residents. The last information regarding Don Ellis is that he lived in Alabama.

14.     **Ronald Wilson** - Ronald Wilson was the project manager for Jefferson County, Alabama for the manhole rehabilitation project. PSI expects him to testify that PSI complied with its contractual obligations to Jefferson County Alabama. Based upon information and belief he is an Alabama resident.

15.     **The Laboratory Equipment** - PSI tested that "product samples" on a machine called a SATECM120 HVL. The machine is approximately 8 feet tall, 3-4 feet square and is estimated to weigh 1000 pounds.

PSI anticipates that if the trial were in Alabama it would request a jury view of the testing machine to demonstrate the manner in which PSI tested the "product samples'. This is extremely relevant given that the plaintiffs contend PSI negligently tested the "product samples".

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5th DAY OF JANUARY, 2006

_____
Brian P. Voke

6

My commission expires: 6/12/09
Date: 1/5/06